IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| MARGARET GOODE, NICOLE MANN, DOLORES EVERETTE, JESSICA DEQUITO, THERESA ATWATER, JACQUELINE BALLINGER and RENA PIERCE | : : : : : : : | CIVIL ACTION |
| v. | : : | |
| CAMDEN CITY SCHOOL DISTRICT, KEITH MILES and HYE-WON GEHRING | : : | NO. 16-3936 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                      July 15, 2021

A group of former teachers in the Camden City School District ("District") brought this age discrimination and retaliation action against the District and two principals.[1] Following Judge Kugler's summary judgment ruling, only four of plaintiff Rena Pierce's claims against defendant Keith Miles remain: age discrimination under New Jersey's Law Against Discrimination ("LAD"), retaliation for whistle-blowing activity under New Jersey's Conscientious Employee Protection Act ("CEPA"), and retaliation for speech protected by the First Amendment under Section 1983 and New Jersey's Civil Rights Act ("CRA").[2] Miles has moved in limine to exclude Pierce's evidence relating to constructive discharge, economic damages, and non-economic damages.[3]

---

[1] The defendants originally included the District's superintendent, two other principals, and two lead educators from Woodrow Wilson High School. Pls.' Fourth Am. Compl. at ¶¶ 24, 27-30 (ECF No. 61). On November 7, 2019, the parties agreed to dismiss these defendants with prejudice, leaving only the District, Miles, and Gehring in the suit. *See* Partial Stip. of Dism. w. Prejudice at ¶ 10 (ECF No. 108).

[2] Judge Kugler granted summary judgment on all remaining plaintiffs' claims. The case was reassigned after that ruling.

[3] Miles also moved to exclude evidence of Pierce's speech that Judge Kugler ruled were not protected under the First Amendment. Def.'s Mot. in Lim. at 28-30. At oral argument, Pierce's counsel withdrew her opposition to precluding this evidence. Oral Arg. Tr. at 34:8-14. Thus, we shall grant the motion

1

We shall deny the motion to exclude evidence relating to constructive discharge, economic damages in the form of back pay, and non-economic damages for emotional distress. We shall grant the motion to exclude evidence relating to economic damages in the form of front pay and non-economic damages for physical injuries.

**Factual Background[4]**

Plaintiff Rena Pierce was a tenured special education teacher at Woodrow Wilson High School in the Camden City School District until her retirement in May 2016.[5] She was also a representative of the teachers' union.[6] Defendant Keith Miles was the principal of Woodrow Wilson during the 2014-2015 and 2015-2016 school years.[7]

In 2012, the New Jersey Legislature enacted the Teacher Effectiveness and Accountability for the Children of New Jersey Act, N.J.S.A. 18A:6-117 *et seq.*[8] Under the Act, school districts may develop their own evaluation rubrics to measure teacher effectiveness.[9] District superintendents must bring tenure charges against teachers who receive evaluation ratings below a certain threshold in consecutive years.[10] If tenure

---

to exclude this evidence.

[4] This is an abbreviated version of the factual background, reciting only those facts relevant to the issues before us. A more detailed account of the facts and procedural history can be found in Judge Kugler's November 22, 2019 Opinion (ECF No. 109) ("Judge Kugler Opinion").

[5] J. Kugler Op. at 2, 4, 7.

[6] *Id*. at 4.

[7] *Id*. at 2.

[8] *Id*.

[9] *Id*.

[10] *Id*. at 2-3.

charges are sustained, the teachers are terminated and risk losing their pensions, benefits, and certifications.[11]

Pierce and six other teachers sued the District and several individuals,[12] alleging the District implemented a policy to use its new evaluation rubric to pressure older teachers to retire.[13] As part of this effort, the plaintiffs allege, evaluators gave older teachers unduly low scores and surreptitiously recorded them during the evaluations in violation of the collective bargaining agreement with the District.[14] They claim Miles was responsible for implementing the policy at Woodrow Wilson.[15]

In the 2013-2014 school year, Pierce taught one or two classes outside her main classroom, requiring her to move her heavy teaching equipment from classroom to classroom.[16] She did not complain about her schedule.[17] She received an evaluation score of "effective" for the year.[18]

In 2014, Miles became principal of Woodrow Wilson.[19] Although Pierce and Miles initially had a good relationship, it soured when Pierce began objecting to some of Miles's

---

[11] *Id*. at 3.

[12] Defendant Hye-Won Gehring was co-principal at R.T. Cream Family School. *Id*. at 2. All claims against Gehring have been dismissed. *Id*. at 40.

[13] *Id*. at 3.

[14] *Id*.

[15] *Id*.

[16] *Id*. at 4-5.

[17] *Id*. at 5.

[18] *Id*.

[19] *Id*.

3

proposals as violating the collective bargaining agreement, state, or federal law.[20] She also objected when Miles attempted to record a staff meeting.[21]

Pierce's schedule and classroom assignments changed during the 2014-2015 school year.[22] She was forced to walk between classrooms more frequently and tote her heavy equipment up and down stairs.[23] Her special education class was moved to a classroom without visual aids.[24] These changes were at Miles's direction.[25]

That same year, Pierce noticed that other older teachers were forced to move between classrooms and denied classrooms with visual aids.[26] In her capacity as union representative, she raised these issues with Miles at staff meetings.[27] On several occasions, Miles made comments that Pierce believed showed a discriminatory animus. He made statements like "he knew he would have a problem with the older teachers transitioning to the Woodrow Wilson way," she reminded him of his mother, and "you can't teach an old dog new tricks."[28]

Pierce received "partially effective" or "ineffective" scores on several evaluations from Cameron Baynes and Genevieve Byrd-Robinson, the two lead educators at

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 6; Oral Arg. Tr. at 6:13-21.

[26] J. Kugler Op. at 6.

[27] *Id.*

[28] *Id.*

4

Woodrow Wilson, for the 2014-2015 school year.[29] She requested in-class coaching or modeling, but never received such instruction.[30] Other older teachers complained to her that they did not receive coaching.[31] Pierce continued to complain to Miles and other school officials about the schedule changes, evaluation process, and other issues.[32] She received an overall score of "partially effective" for the 2014-2015 school year and was placed on a "corrective action plan" for the next school year.[33]

Pierce's schedule and class assignments became more onerous in the 2015-2016 school year. She had to travel farther between classrooms and buildings, and was assigned to teach general education and honors classes rather than the special education classes for which she was qualified.[34] According to Pierce, Miles was responsible for these changes.[35] At the end of the year, Pierce received an overall evaluation score of "partially effective."[36] Because she received scores of "partially effective" in two consecutive years, Pierce faced possible tenure charges, which could have resulted in her losing her pension, benefits, and certifications.[37] She retired on May 1, 2016.[38]

---

[29] *Id*. at 5-6.

[30] *Id*. at 6.

[31] *Id*.

[32] *Id*.

[33] *Id*.

[34] *Id*. at 5-6.

[35] *Id*. at 6.

[36] *Id*. at 7.

[37] *Id*. at 2-3.

[38] *Id*. at 7.

5

Pierce and six other teachers in the school district asserted claims against the District for age discrimination and hostile work environment under ADEA and LAD, and retaliation against whistle-blowing activity under CEPA.[39] They also asserted claims against Miles and a principal at another school for age discrimination and hostile work environment under LAD, retaliation against First Amendment-protected activity under Section 1983 and CRA, retaliation under CEPA, and violations of New Jersey's doctrine of fundamental fairness.[40] Only Pierce's claims against Miles under LAD, CEPA, Section 1983, and CRA survived summary judgment.[41]

**Analysis**

*Evidence of Retaliatory Action*

Miles contends Pierce cannot present evidence that she suffered a constructive discharge. He argues that Judge Kugler's ruling that she did not establish a *prima facie* case for hostile work environment precludes constructive discharge because it requires significantly more egregious conduct.[42] Pierce counters that although she is not asserting a claim for constructive discharge, evidence supporting a constructive discharge claim is relevant to prove she suffered an adverse employment action for her CEPA claim.[43]

One of the elements Pierce must prove to establish a *prima facie* case of retaliation for whistle-blowing activity under CEPA and a claim of age discrimination under LAD is

---

[39] *Id*. at 10.

[40] *Id*.

[41] *Id*. at 40.

[42] Def.'s Mot. in Lim. at 9-13 (ECF No. 136).

[43] Pl.'s Resp. at 1-2 (ECF No. 137); Oral Arg. Tr. at 22:9-11.

6

that she suffered an "adverse employment action." *Lippman v. Ethicon, Inc.*, 119 A.3d 215, 226 (N.J. 2015) (citations omitted); *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (citing *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir. 2001)). Similarly, to establish First Amendment retaliation claims under Section 1983 and CRA, a public employee must show she suffered a "retaliatory action." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015), *as amended* (Oct. 25, 2019) (quoting *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)); *Lapolla v. Cty. of Union*, 157 A.3d 458, 464 (N.J. App. Div. 2017) (citations omitted). Unlike adverse employment actions in discrimination cases, the threshold for a retaliatory action is much lower. It does not require a significant change in the terms and conditions of employment. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 758 (3d Cir. 2019) (internal citations omitted) ("[T]he nature of the retaliatory acts committed by the public employer [for Section 1983 actions] must 'be more than *de minimis*,'" meaning "more than 'criticism, false accusations, or verbal reprimands.'").

In denying summary judgment on her CEPA claim, Judge Kugler found that Pierce's evidence of the detrimental scheduling changes and negative performance reviews established a "pattern of retaliatory activity . . . virtually equivalent to a discharge."[44] Judge Kugler also found these scheduling changes satisfied the adverse employment element of her LAD claim, and that "retaliatory changes to an employee's work schedule may violate her First Amendment rights" in the context of Pierce's Section 1983 and CRA claims.[45]

---

[44] J. Kugler Op. at 30.

[45] *Id*. at 33, 26 (citing *Shrum v. City of Coweta, Okla.*, 449 F.3d 1132 (10th Cir. 2006)).

7

Pierce seeks to present evidence of the negative treatment Miles inflicted on her during the two years leading up to her retirement, including the negative performance evaluations and scheduling changes that required her to move between classrooms more frequently while carrying heavy equipment, teach in classrooms without visual aids, and teach general education and honors classes in addition to special education classes. This evidence is not offered to prove constructive discharge. It is offered to establish that she suffered an "adverse employment action" for purposes of her CEPA and LAD claims, and a "retaliatory action" for purposes of her Section 1983 and CRA claims. Therefore, we shall deny Miles's motion in limine to the extent it seeks to preclude evidence that is relevant to show Pierce suffered adverse employment and retaliatory actions.[46]

*Economic Damages*

Miles seeks to preclude Pierce from introducing evidence of economic losses under LAD or CEPA.[47] Relying on *Donelson v. DuPont Chambers Works*, Miles contends that Pierce cannot recover economic damages absent a showing that she was either constructively discharged or suffered a mental injury rendering her unfit for continued employment.[48] According to Miles, Pierce cannot show she was constructively discharged because she voluntarily retired and later tried to rescind her retirement.[49] Though she was threatened with tenure charges, none were filed.[50] Miles argues that because she

---

[46] An appropriate limiting jury instruction, if requested, will avoid any misunderstanding about the purpose of the evidence. FED. R. EVID. 105.

[47] Def.'s Mot. in Lim. at 13-14.

[48] *Id.*; Oral Arg. Tr. at 10:7-16, 12:1-8, 14:10-15.

[49] Def.'s Mot. in Lim. at 17.

[50] *Id*. at 17-19.

8

retired without utilizing the available procedural protections to challenge the tenure charges in the event the District decided to bring them, Pierce cannot claim her retirement was involuntary or coerced.[51] Furthermore, he argues, Pierce cannot show she was unable to work, thereby disqualifying her from recovering economic damages under *Donelson*.[52] In support of this argument, Miles seeks to exclude six of Pierce's trial exhibits and evidence relating to her years of public service, salary, benefits, and calculations of economic losses.[53]

Focusing on her CEPA claim,[54] Pierce contends that constructive discharge and mental injury are only two possible grounds for recovery of economic damages, specifically lost wages.[55] According to Pierce, a plaintiff may recover lost wages under CEPA if the losses were proximately caused by the retaliation, which is a jury question.[56] She argues that neither CEPA nor *Donelson* imposes a threshold requirement of a mental injury or constructive discharge to recover lost wages.[57]

---

[51] *Id*.

[52] *Id*. at 16-17. Although she vaguely testified about psychological damage, she did not seek any mental health treatment, nor did she present any other documentary or medical evidence of a mental injury. *Id*. at 16-17. *See also* Def.'s Mot. in Lim. Ex. C; Oral Arg. Tr. at 20:16-20.

[53] Def.'s Mot. in Lim. at 22-23; Joint Final Pretrial Order at 8-9, ¶¶ 10-27 (ECF No. 131). Miles also argues we should preclude any evidence supporting recovery for future wage loss or loss of earning capacity for lack of expert testimony. Def.'s Mot. in Lim. at 19-21. Pierce concedes her claim for front pay is barred. Pl.'s Resp. at 9-10; Oral Arg. Tr. at 6:24-7:1.

[54] Although Pierce requests economic damages on her LAD claim in the Fourth Amended Complaint, *see* Pls.' Fourth Am. Compl. at 57, she appears to concede that economic damages are not available under LAD in the absence of a constructive discharge. Pl.'s Resp. at 3-5.

[55] *Id*. at 3-6.

[56] *Id*. at 3-4, 7-8.

[57] *Id*. at 4-7.

In *Donelson*, the New Jersey Supreme Court held that the plaintiff could recover economic damages under CEPA even though he was not constructively discharged because his employer's retaliation proximately caused a mental injury rendering him unfit for future employment. 20 A.3d 384, 392-93 (N.J. 2011). Miles narrowly interprets *Donelson* to mean that recovery of economic damages under CEPA is limited to cases where a plaintiff was either constructively discharged or mentally incapacitated as a result of the employer's retaliation.

*Donelson* did not hold that constructive discharge and mental impairment are the only grounds for recovery of economic damages in a CEPA retaliation case. It held that mental disability is one, not the only, basis for recovery of lost wages.

The Court in *Donelson* focused on mental disability and unfitness because that is what the plaintiff had claimed. The plaintiff in *Donelson* demonstrated that the retaliation for his whistle-blowing activity caused a mental impairment that rendered him incapable of continuing to work. *Id*. at 395. Significantly, he sought economic damages in the form of both front and back pay. *Id*. The Court stated "a person injured by the tortious conduct of another 'has the right to recover damages for diminished-earning capacity,' provided there is sufficient proof both to establish that the injury will impair his future income and to quantify the lost income." *Id*. at 392-392 (quoting *Frugis v. Bracigliano,* 827 A.2d 1040, 1060 (N.J. 2003)). Because the plaintiff in *Donelson* sought to recover for loss of future income, he necessarily had to prove that his mental injury incapacitated him from continuing to work.

The text of CEPA does not limit the bases for economic damages to constructive discharge and mental unfitness. On the contrary, it clearly states: "All remedies available

in common law tort actions shall be available to prevailing plaintiffs," including "[t]he compensation for all lost wages, benefits and other remuneration." N.J.S.A. 34:19-5. The *Donelson* court, citing the statute, announced that "[t]he remedy provision of CEPA . . . does not intimate that a constructive discharge is the only basis for a lost-wage claim in the circumstances before us." 20 A.3d at 394. Noting that "[c]onstructive discharge is but one ground for recovery of lost wages under CEPA," the Court explained that "[i]f an employer engages in unlawful retaliation, then it is accountable for the damages proximately caused to the employee" according to "the common-law principles of damages." *Id*. at 386. "Under the common law, 'a defendant who negligently injures a plaintiff or his property may be liable for all proximately caused harm, including economic losses.'" *Id*. at 392 (quoting *People Express Airlines, Inc. v. Consol. Rail Corp.,* 495 A.2d 107, 109 (N.J. 1985)).

Following *Donelson*, New Jersey appellate courts have awarded economic damages on CEPA retaliation claims absent constructive discharge or mental unfitness. *See, e.g., Chiofalo v. State*, No. 2349-16, 2020 WL 4748097, at *11 (N.J. App. Div. Aug. 7, 2020) ("[C]ontrary to defendants' contentions on appeal, back and front pay can be awarded under CEPA, even in the absence of an actual or constructive discharge where plaintiff is claiming that he or she was retaliated against by not being promoted.").

Miles contends that because Judge Kugler found that she did not establish a hostile work environment claim, she cannot make out one for constructive discharge which requires a higher standard.

Contrary to Miles's contention, Judge Kugler did not find that the evidence did not amount to a constructive discharge. In ruling that the fact that "Pierce voluntarily resigned

11

her position is not fatal to her CEPA claim," Judge Kugler found that "the cumulative effect of the low evaluations raised the specter of tenure charges for Pierce, impacting her job security."[58] He concluded that this "pattern of retaliatory activity Pierce testified to was virtually equivalent to discharge."[59]

Judge Kugler's rulings are the law of the case.[60] We are bound by those rulings.

Evidence that may support a constructive discharge claim may also be relevant to show the effect of an employer's retaliatory actions. Pierce need not bring a constructive discharge claim to present the evidence in support of her CEPA retaliation claim. If the jury finds that the retaliatory actions making out Pierce's CEPA claim impelled her to retire early to avoid possible tenure charges, she may recover economic damages.[61] Therefore, we shall permit her to introduce evidence of her years of service, her retirement goals, her gross income at the time of her retirement, and the monthly deductions from her pension for Medicare and other benefits.[62]

---

[58] J. Kugler Op. at 29-30.

[59] *Id*. at 30.

[60] Oral Arg. Tr. at 2:16-22.

[61] What happened next after she voluntarily retired is problematic for Pierce in determining the extent of her economic loss and the severity of the conditions she complained of in her testimony. She unsuccessfully sought to rescind her retirement and return to her job a few weeks later. Def.'s Mot. in Lim. Ex. B. At that point, Miles could argue, she no longer felt threatened or she never felt threatened.

[62] In light of our ruling, trial exhibits P0024, P0025, P0026, P0027, and P0028, and evidence relating to paragraphs 14, 15, 18, 19, and 24 through 26 of Pierce's contested facts concerning damages identified in the Joint Final Pretrial Order are admissible. We shall grant the motion in limine as to paragraphs 13, 16, 17, 20 through 23, and 27 of the contested facts concerning damages as they relate to claims for front pay.

*Non-Economic Damages*

Pierce contends she can show she suffered emotional distress as a result of her treatment.[63] Miles seeks to preclude evidence of emotional damages.[64] Although he acknowledges that expert testimony is not required to prove non-economic losses in employment and civil rights cases, he contends that Pierce must still present "competent evidence" of actual injury.[65] According to Miles, the only evidence Pierce offers in support of her emotional injuries is her own contradictory testimony.[66] He also argues that evidence relating to emotional distress damages should be precluded because Pierce did not receive psychological treatment for her mental injuries.[67]

Pierce counters that she testified to the emotional effects of the discrimination and retaliation she suffered.[68] She argues it is for the jury to decide if her testimony is credible.[69]

Recovering emotional distress damages in discrimination cases under New Jersey law requires "a far less stringent standard of proof than that required for a tort-based emotional distress cause of action." *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004). Under

---

[63] Pl.'s Resp. at 13-15. Pierce claimed in her deposition that she also suffered physical injuries, including aggravation of an injury to her lower back, aggravation of her asthma, and aggravation of her hypertension. Def.'s Mot. in Lim. Ex. F at 11:21-24 ("Pierce Deposition Transcript Volume 1"). In her response to Miles's motion in limine, Pierce focused solely on emotional distress. Her counsel stated at oral argument that she is not seeking damages related to physical injury. Oral Arg. Tr. at 31:23-25. Hence, we shall preclude all evidence relating to non-economic damages for physical injury.

[64] Def.'s Mot. in Lim. at 28.

[65] *Id*. at 24.

[66] *Id*. at 24-25.

[67] *Id*. at 25, 27.

[68] Pl.'s Resp. at 13-15.

[69] *Id*. at 15-16.

LAD and CEPA, expert testimony is not required to prove past emotional distress. *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 622 (N.J. 2013) (citations omitted).[70] Similarly, lay testimony alone is sufficient to support recovery of emotional distress damages in Section 1983 cases. *Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 36 (3d Cir. 1994).[71] *See also Carey v. Piphus,* 435 U.S. 247, 263-64 (1978) ("Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff. . . . Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others.").

Emotional distress damages may be awarded in employment and civil rights cases where a plaintiff testifies to the effects the discrimination, retaliation, or other violations of constitutional rights had on her mental health, including feelings of hurt, frustration and betrayal, stress, difficulty sleeping, depression, and other issues. *See, e.g., Rendine v. Pantzer*, 648 A.2d 223, 245 (N.J. App. Div. 1994), *aff'd as modified*, 661 A.2d 1202 (N.J. 1995) (affirming award of emotional distress damages on plaintiffs' LAD discrimination claims where plaintiffs did not submit expert testimony or objective corroboration, but testified "in detail their inconvenience and economic loss, physical and emotional stress, anxiety in searching for reemployment, uncertainty, career and family disruption and other adjustment problems"); *Bolden*, 21 F.3d at 33-34 (finding lay testimony from plaintiff and

---

[70] The New Jersey Supreme Court has held that expert testimony is required to support an award for future emotional distress. *Battaglia*, 70 A.3d at 623-24. *See also Cuevas v. Wentworth Grp.*, 144 A.3d 890, 908 (N.J. 2016) (citations omitted). Here, Pierce is seeking damages only for past emotional distress. Pl.'s Resp. at 13-15.

[71] This principle holds true for CRA claims as well. *See Tumpson v. Farina*, 95 A.3d 210, 223 (N.J. 2014) (explaining that the CRA is "modeled" off of Section 1983); *Cruz v. Camden Cty. Police Dep't*, 245 A.3d 254, 259 (N.J. App. Div. 2021) ("[I]n interpreting the CRA, New Jersey courts often look to federal cases analyzing § 1983.") (citations omitted).

plaintiff's friends and family sufficient to support jury award of emotional distress damages under Section 1983); *Gagliardo v. Connaught Lab'ys, Inc.*, 311 F.3d 565, 573 (3d Cir. 2002) (finding lay testimony from plaintiff's co-workers and family sufficient to support jury award of emotional distress damages under the Americans with Disabilities Act).

Pierce testified she experienced emotional distress as a result of Miles's alleged discriminatory and retaliatory treatment. The effects included feeling intimidated, stressed, frightened, worn out, hopeless, humiliated, and hurt.[72] She testified that she had difficulty sleeping and woke up with headaches or nosebleeds.[73] There may be inconsistencies in her testimony regarding her emotional distress,[74] but her credibility is for the jury to decide. Thus, we shall deny Miles's motion to the extent it seeks to preclude evidence relating to non-economic damages for emotional distress.[75]

---

[72] Pierce Dep. Tr. Vol. 1 at 20:4-5, 25:11-26:7, 38:10-11, 39:25-40:12, 52:13-24, 53:20-25, 60:2-5, 60:19-21, 65:16-17, 68:21-69:13; Def.'s Mot. in Lim. Ex. D at 184:10-13, 186:12-20.

[73] Pierce Dep. Tr. Vol. 1 at 51:10-17, 51:18-52:25.

[74] For example, at one point she stated that her stress was caused by this lawsuit. *Id*. at 26:17-19, 48:4-12.

[75] Trial exhibits P0023, P0024, P0026, and P0027 and evidence relating to paragraphs 10, 11, 12, 18, 19, and 24 through 26 of Pierce's contested facts concerning damages outlined in the Joint Final Pretrial Order are admissible for proving emotional distress damages. Joint Final Pretrial Order at 8-9, 25-27.